**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anitta Baker, | ) No. CV 10-1939-PHX-JAT |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Michael J. Astrue, Commissioner of Social Security, | ) |
| Defendant. | ) |

Pending before the Court is Plaintiff Anitta Baker's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's application for Social Security disability benefits. For the reasons that follow, the Court affirms the ALJ's decision to deny Social Security disability benefits.

**I.   PROCEDURAL HISTORY**

On November 20, 2006, Plaintiff was awarded disability benefits for the closed period of December 22, 2002 to July 31, 2005. Record Transcript ("TR") 15, 269–75. Plaintiff returned to work after July 31, 2005. TR 269–70.

With respect to Plaintiff's current claim for disability benefits, Plaintiff has not performed substantial gainful activity since July 2006.[1]  TR 357, 449–50.  On January 9, 2008, Plaintiff protectively filed an Application for Disability Insurance Benefits, alleging a disability onset date of July 23, 2006.  TR 15.  Plaintiff also protectively filed an application for supplemental security income benefits, which also alleged disability beginning July 23, 2006.  TR 15.  A hearing was conducted on November 30, 2009.  TR 439–65.  The ALJ determined that Plaintiff suffers from the severe impairments of debilitating back pain and obesity.  TR 17.  However, the Social Security Administration ("SSA") denied Plaintiff's application on January 29, 2010, and found that Plaintiff was capable of performing a limited range of light work.  TR 15, 21.  After Plaintiff's request for review by the SSA Appeals Council was denied on July 14, 2010, TR 6–9, Plaintiff commenced an action before the District Court.  Dkt. 1.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Background

Plaintiff was born on March 3, 1968, stands at 5 feet, 4 inches tall, and weighs 300 pounds.  TR 445.  She lives with her fiancé in an apartment in Phoenix, Arizona.  TR 444–45.  Plaintiff received her GED and earned degrees in computer drafting and design and automated manufacturing from ITT Tech.  TR 449.  Before applying for disability benefits, Plaintiff worked as a mechanic, a dispatcher, and a driver for a cab company, from August 2005 to July 2006.  TR 450.  Prior to her work for the cab company, Plaintiff was a truck driver and security guard.  TR 450.

On November 30, 2009, Plaintiff and her counsel appeared before the ALJ for a hearing.  TR 439.  After a colloquy regarding Plaintiff's background, the ALJ and Plaintiff discussed Plaintiff's weight fluctuations.  TR 446–48.

---

[1] Plaintiff worked for a brief period at the Honey Baked Ham Company in November 2007.  TR 449.  However, the ALJ did not consider this employment in determining the date of Plaintiff's last substantial gainful activity.

- 2 -

Plaintiff testified that in November 2007, she was employed by the Honey Baked Ham Company at the retail counter, and before that she worked for her father's business by refinishing furniture. TR 449–50. Her job at Honey Baked Ham Company required Plaintiff to stand for eight hours each day, which was too long according to Plaintiff. TR 451. From August 2005 to July 2006, Plaintiff testified that she worked as a mechanic for a cab company, and then as a dispatcher before becoming a street driver and a company driver. TR 450. Plaintiff testified that she is not working now due to the pain in her lower back and down her legs. Plaintiff testified that her job at the cab company required her to sit for long periods of time, which is not something she can do. TR 451.

Plaintiff testified that her back pain is caused by degenerative disk disease in her lower back, and arthritis caused by the degenerative disk disease. TR 452. Plaintiff acknowledged that after her initial period of disability (December 22, 2002 to July 31, 2005), she improved and went back to work. TR 452. Plaintiff testified that she has constant, moderate to moderately severe back pain. TR 454–55. Plaintiff's pain increase with an increase in her activity level. TR 455. Plaintiff testified that she learned exercises and stretches from physical therapy ,which help the pain subside. TR 455. Plaintiff also testified that, after consulting with an orthopedic surgeon, there is nothing that can be done surgically to treat Plaintiff's back pain. TR 459.

According to Plaintiff, she can stand for two or three hours in an eight-hour day for 20 minute intervals. TR 451. She testified that she can sit for 30 minute intervals, but needs to move when she experiences numbness in her legs. TR 451–52. Plaintiff testified that she changes positions all day long. TR 452. In an eight-hour day, Plaintiff spends two hours laying down for varying intervals. TR 456. Plaintiff testified that she can lift up to eight pounds without experiencing increased pain, and 10 to 20 pounds with additional pain. TR 458.

Plaintiff testified that in March 2009, she was diagnosed with uterine cancer and spent two weeks in the hospital where doctors performed a hysterectomy.[2]  TR 453.  Prior to her cancer diagnosis, Plaintiff testified that she suffered from fatigue for approximately eight months.  TR 453.  She then testified that the issue has been resolved and that "everything is great."  TR 453.  Plaintiff also testified that she pulled all the ligaments and tendons in her left knee, and that she was treated with physical therapy and a knee brace.  TR 453–54.  According to Plaintiff, she has problems with her knee occasionally, but not on a daily basis.  TR 454.  Plaintiff testified that her left knee is not an issue.  TR 454.

Plaintiff testified that she has a prescription for Vicodin (hydrocodone), but she tries not to take it, due to its side effect of drowsiness.  TR 457.  According to Plaintiff, she takes a pain medication every day, but sometimes its only a couple of Tylenol.  TR 457.  Plaintiff also testified that she takes iron pills for anemia diagnosed in March 2009.[3]  TR 458.

Plaintiff's disability appeal report states that she has difficulty cooking, washing dishes, vacuuming, sweeping, doing laundry, shopping, and other activities that require her to stand more than 10 minutes.  TR 331, 342.  Plaintiff also states that she has trouble sitting in a chair for an extended period of time.  TR 342.

**B.  Record Evidence**

**1.  Plaintiff's Impairments**

Plaintiff has a long history of back pain.  TR 451.  On May 25, 2004, an MRI was performed in connection with Plaintiff's back and leg pain.  TR 216.  The MRI revealed no disk space narrowing or desiccation, and no disk bulge or protrusion, no significant spinal stenosis, no compression of the thecal sac or neural foraminal narrowing in most of Plaintiff's spine.  TR 216.  However, the MRI revealed L5-S1 mild disk space narrowing and

---

[2] There are no medical records in the administrative record concerning Plaintiff's uterine cancer and related treatment from March 2009.

[3] There are no medical records in the administrative record concerning Plaintiff's anemia and blood transfusion in March 2009.

- 4 -

1  desiccation, but no significant central canal stenosis or neural foraminal narrowing, and no
2  facet or ligamentum hypertrophy. TR 217. The impression was an annulus tear and small
3  (2–3 mm) central disk protrusion at L5-S1. TR 217. Plaintiff states that since the 2004 MRI,
4  her primary care providers have treated her conservatively for chronic low back pain. Dkt.
5  14 at 3:1–2.

6  On August 17, 2006, Plaintiff was seen by physician assistant Sherri Sessler, PA-C,
7  at Pueblo Family Physicians, for degenerative disk disorder. TR 374. Ms. Sessler notes that
8  Voltaren helped to relieve Plaintiff's back pain. TR 374. The notes from the visit indicate
9  that Plaintiff is working with a disability attorney, and has not seen an orthopedist since
10 2004. The notes also indicate that Plaintiff can stand still for 20 minutes, and her right foot
11 is stronger than her left foot. TR 374.

12 On or about April 19, 2007, SSA claims representative J. Burns conducted a face-to-
13 face interview with Plaintiff, and observed "no noticeable impairment." TR 295–98.

14 On May 14, 2007, Ms. Sessler saw Plaintiff in connection with her back pain. TR
15 372. The notes from the visit indicate that Plaintiff's increased pain made it too difficult to
16 work in 2006. TR 372. The notes also indicate that Plaintiff saw an orthopedist, but that no
17 surgery could be done for her back. TR 372.

18 On December 13, 2007, Plaintiff returned to Pueblo Family Physicians, and was seen
19 again by Ms. Sessler for an upper respiratory infection. TR 392. The notes from the visit
20 indicated that Plaintiff recently tried to obtain employment, but an eight-hour day was too
21 long, and she had increased leg pain and aches. TR 392. Plaintiff was treated again on
22 December 19, 2007, and the notes from the visit indicate that Plaintiff's pain is "OK" and has
23 not increased. TR 391.

24 On or about January 9, 2008, SSA claims representative K. Jenkins conducted a face-
25 to-face interview with Plaintiff, and observed that Plaintiff "seemed to breath heavy
26 throughout the interview. She could not sit in one spot for long and kept standing up. She
27 stated it was hard to sit in one spot for long." TR 325–27.

28

There is no evidence in the administrative record that Plaintiff sought any medical treatment in 2008.

On August 25, 2009, Plaintiff returned to Pueblo Family Physicians, and was treated by Ms. Sessler for a dermatological issue on her arms. TR 421. Notes from the visit indicate that Plaintiff saw an oncologist the previous day. TR 421.

On September 9, 2009, Plaintiff was seen by Dr. Donald Cunningham, a physician at Pueblo Family Physicians, for a follow-up examination concerning the blisters on Plaintiff's arms. TR 419. Plaintiff complained of severe lumbar pain, and Dr. Cunningham ordered an MRI of Plaintiff's spine. TR 420. An MRI conducted on September 24, 2009 revealed mild narrowing of the central canal due to facet arthropathy at the L4-5 level, and prominent central disk desiccation and disk space narrowing at L5-S1 with mild facet arthropathy and mild foramina narrowing bilaterally. TR 418. There was no direct compromise of neural elements. TR 418.

On October 13, 2009, Ms. Sessler treated Plaintiff for nausea and the stomach flu, and prescribed Vicodin for Plaintiff's lower back pain. TR 417.

### 2. Recent Medical Assessments

On August 14, 2007, Dr. M. Desai completed a medical assessment at the request of the SSA. TR 397. Dr. Desai reviewed Plaintiff's medical records in preparing his case analysis, but did not conduct an examination of Plaintiff. A consultative examination was scheduled, but Plaintiff failed to keep the appointment. TR 397. Based on Dr. Desai's review of the records, he concluded that Plaintiff's lower back impairment and obesity were definitely severe, but did not meet or equal any impairments listed in the SSA's regulations. TR 397. Dr. Desai also completed a physical residual functional capacity assessment in connection with his evaluation of Plaintiff's medical records. TR 403–10. Dr. Desai concluded that Plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day with certain postural limitations on climbing, balancing, stooping, kneeling, crouching and crawling. TR 404–05.

On March 19, 2008, Dr. Thomas Glodek reviewed Plaintiff's medical records on behalf of the SSA. TR 372. Dr. Glodek concluded that there was insufficient objective medical evidence in terms of functional physical examinations, efficacy of treatment, and submission of activities of daily living in the medical record to allow a determination to be made. TR 415. Case development records prepared by the SSA indicated that Plaintiff failed to attend two consultative examinations that were scheduled to obtain more findings. TR 400.

On August 24, 2009, Dr. Cunningham and Ms. Sessler co-signed a medical assessment of Plaintiff's ability to do work related activities. TR 422–24. The assessment states that in an eight-hour day, Plaintiff can sit three hours each day in one-hour intervals, and can be on her feet three hours each day in 30 minute intervals. TR 422. Additionally, the assessment provides that Plaintiff can occasionally carry 11 to 20 pounds, and occasionally bend, squat, crawl, climb, and frequently reach. татн 423. The assessment states that Plaintiff's pain and fatigue were set forth in the diagnostic impression in Plaintiff's 2004 MRI. TR 424. The assessment recommended further evaluation for functional capabilities. TR 424.

### 3. Vocational Expert

During the November 30, 2009 hearing before the SSA, the Vocational Expert ("VE") testified to Plaintiff's past work history and potential for future employment. TR 461–64. The VE described Plaintiff's work as a cab driver and truck driver as medium, semi-skilled work with specific vocational preparation ("SVP") of three, and Plaintiff's work as a security guard as light, semi-skilled work with SVP of four. TR 461.

The ALJ's first hypothetical concerned a person who is a college graduate able to do light exertional level work. TR 461. This hypothetical person cannot lift any more than 20 pounds occasionally, and lesser weight more frequently. TR 461. This hypothetical person has postural restrictions that restrict crawling, crouching, climbing, squatting or kneeling. TR 461. This hypothetical person also has lower extremity limitations preventing the use of legs and feet for pushing, pulling and controlling, and upper extremity limitations preventing

1  reaching above shoulder level. TR 461–62. This hypothetical person requires a sit/stand
2  option at work. TR 462.

3        The ALJ asked if these restrictions would prevent the hypothetical person from
4  performing Plaintiff's past work, and the VE responded that they would. TR 462. The ALJ
5  then asked whether there were any another jobs that exist in significant numbers in the
6  national economy that the hypothetical person could perform, and the VE responded that
7  there would be light, unskilled work available. TR 462. As an example of light, unskilled
8  work available, the VE testified that the hypothetical person could work as an assembly
9  worker, a quality control inspector, or a cashier. TR 462. The VE also described the
10 availability of these jobs in the United States and Arizona. TR 462.

11       The VE testified that he was familiar enough with the jobs listed above to know that
12 these jobs permit the sit/stand option, which the Dictionary of Occupational Titles does not
13 recognize. TR 462. The VE also testified that these jobs tolerate an employee missing a
14 couple of days of work each month. TR 462–63. The VE confirmed that these jobs are
15 unskilled with SVP of two.

16       Plaintiff was then given the opportunity to question the VE. TR 463. Plaintiff's
17 counsel added a further limitation to the hypothetical posed by the ALJ that the hypothetical
18 person had to exercise the sit/stand option every 20 minutes. TR 463. Plaintiff's counsel
19 asked the VE whether this limitation would change the VE's conclusion. TR 463. The VE
20 responded that if the hypothetical person could not get comfortable in any position, then it
21 would make it difficult for the hypothetical person to perform the jobs previously described.
22 TR 463.

23       Plaintiff's counsel posed a second hypothetical to the VE in which the hypothetical
24 person could sit for three hours and stand/walk for three hours in an eight-hour day, and
25 experienced moderately severe pain on a daily basis that affected the hypothetical person's
26 persistence, pace and concentration. TR 463–64. The VE testified that this hypothetical
27 person could not sustain employment. TR 464.
28 //

## III. LEGAL STANDARD

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that the claimant is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.[4]

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v.*

---

[4] Plaintiff does not challenge the ALJ's finding that Plaintiff has not engaged in substantial gainful activity since July 23, 2006, the alleged onset of the disability. TR 17; Dkt. 14 at 2:8–11, 16.

- 9 -

1  *Yuckert*, 482 U.S. 137, 153–54 (1987)). If the claimant does not have a severe impairment, the claimant is not disabled.[5]

3.  Having found a severe impairment or impairments, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the SSA's regulations.[6] 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. *Id.* § 404.1520(d). If the impairment or impairments do not meet or equal a listed impairment, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] record." *Id.* § 404.1520(e). A claimant's "residual functional capacity" or "RFC" is the most the claimant can do in a work setting despite all her impairments, including those that are not severe, and any related symptoms. *Id.* §§ 404.1545(a)(1–2), 416.945(a)(1).

4.  At step four, the ALJ determines whether, despite the impairments, the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5.  At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors (age, education, and work experience). *Id.* § 404.1520(g)(1). If the claimant can make an adjustment to other work, then she is not disabled. If the

---

[5] Plaintiff does not formally challenge the ALJ's finding that Plaintiff suffers from the severe impairments of debilitating back pain and obesity. TR 17; Dkt. 14 at 2:8–11.

[6] Plaintiff does not challenge the ALJ's finding that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in the SSA's regulations. TR 18; Dkt. 14 at 2:8–11.

- 10 -

1 claimant cannot perform other work, she will be found disabled.  As previously noted, the
2 Commissioner has the burden of proving the claimant can perform other substantial gainful
3 work that exists in the national economy.  *Reddick*, 157 F.3d at 721.

## IV.     THE ALJ'S DECISION

The ALJ evaluated Plaintiff's alleged disability according to the five-step evaluation process set forth above.  TR 17–21.  The ALJ noted that Plaintiff was 38 years old as of January 29, 2010; therefore, she is considered a younger person as of the alleged disability onset date.  TR 20.  A younger person's age is not considered to seriously affect the claimant's ability to adjust to other work.  20 C.F.R. § 404.1563(c).  The ALJ also noted that Plaintiff has at least a high school education, and that transferability of skills is not an issue based on Plaintiff prior semi-skilled work.  TR 20–21; *see* 20 C.F.R. §§ 404.1568(d), 416.968(d).

At the first step of the sequential process, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability on July 23, 2006.  TR 17.  Next, at the second step, the ALJ found Plaintiff suffered from the severe impairments of "debilitating back pain and obesity."  TR 17.  At the third step of the sequential process, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1."  TR 18.

Next, as part of step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light, unskilled work with restrictions.  TR 18.  The ALJ restricted Plaintiff's RFC to require a sit/stand option, and to provide for no crawling, crouching, climbing, squatting or kneeling, no use of the lower extremities for pushing or pulling, and no use of upper extremities for work above shoulder level.  TR 18.

The ALJ stated that it was evident from Plaintiff's testimony and the complaints to her various physicians that Plaintiff's claim is primary based on disabling pain.  TR 18.  The ALJ acknowledged that Plaintiff's allegations of pain cannot be rejected solely due to the lack of fully-corroborating objective medical evidence.  TR 19.

The ALJ determined that the evidence in the administrative record supported a finding that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. TR 19. However, the ALJ found Plaintiff's testimony not fully credible with respect to the severity and extent of her physical limitations, particularly concerning the intensity, persistence and limiting effects of her symptoms. TR 19. The ALJ also determined that the medical evidence failed to support the severity or extent of Plaintiff's disability as described by Plaintiff. TR 19.

The ALJ relied on the results of the MRI conducted on September 24, 2009, which revealed mild narrowing of the central canal due to facet arthropathy prominent at the L4-5 level, and prominent central disk desiccation and disk space narrowing at L5-S1 with mild facet arthropathy and mild foraminal narrowing bilaterally. TR 19, 418. The MRI showed no direct compromise of neural elements. TR 19, 418.

The ALJ considered the assessment completed by Dr. Cunningham on August 24, 2009, and concluded that Plaintiff was moderately limited in, but not precluded from, her ability to function. TR 19, 422–24. The ALJ stated that although the opinions of treating sources are accorded greater weight than non-treating sources, the treating physician's opinion must be well supported by medically acceptable clinical and laboratory diagnostic techniques. TR 20. The ALJ determined that Dr. Cunningham seemed to rely heavily on the subjective report of symptoms and limitations provided by Plaintiff, and seemed to uncritically accept as true most, if not all, of what Plaintiff reported to Dr. Cunningham. TR 19. The ALJ found that Plaintiff's various forms of treatment were generally successful in controlling her symptoms. TR 19.

The ALJ stated that the RFC conclusion reached by Dr. Desai, who reviewed Plaintiff's medical records on behalf of the SSA, supported a finding of "not disabled." TR 20. The ALJ recognized that this was a non-examining opinion, but found the opinion deserved some weight, particularly in light of the administrative record as a whole. TR 20.

At the fourth step of the sequential process, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as a cab driver, truck driver or security

1 guard. TR 20. Plaintiff's work as a cab driver and truck driver was semi-skilled work at the
2 medium level of exertion, and Plaintiff's work as a security guard was semi-skilled work at
3 the light level of exertion. TR 20. The ALJ relied on the VE's testimony in reaching this
4 conclusion. TR 20.

5 At the final step of the sequential process, the ALJ considered Plaintiff's age,
6 education, work experience and RFC, and concluded that jobs exist in significant numbers
7 in the state and national economies that Plaintiff could perform. TR 21. The ALJ relied on
8 the VE's testimony in reaching this conclusion. TR 21. The VE testified that an individual
9 with Plaintiff's characteristics and restrictions could perform light, unskilled assembly work,
10 quality control inspection work, and cashier work. TR 21. The ALJ found that the VE's
11 testimony was consistent with the Dictionary of Occupational Titles. TR 21. The ALJ
12 acknowledged that Plaintiff cannot perform the full range of light work, but could still
13 perform certain types of light work. TR 21. Therefore, the ALJ ultimately concluded that
14 Plaintiff was not disabled from July 23, 2006 through the date of the ALJ's decision on
15 January 29, 2010. TR 21.

16 **V.    STANDARD OF REVIEW**

17 A district court

> may set aside a denial of disability benefits only if it is not supported by
> substantial evidence or if it is based on legal error. Substantial evidence means
> more than a mere scintilla but less than a preponderance. Substantial evidence
> is relevant evidence which, considering the record as a whole, a reasonable
> person might accept as adequate to support a conclusion. Where the evidence
> is susceptible to more than one rational interpretation, one of which supports
> the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citations and quotations omitted). This standard of review exists, because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Also under this standard, the Court will uphold the ALJ's findings "if supported by inferences reasonably drawn from the record."

- 13 -

1  *Batson v. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must
2  consider the entire record as a whole and "may not affirm simply by isolating a 'specific
3  quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting
4  *Robbings v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

**VI. ANALYSIS**

On appeal, Plaintiff argues that the ALJ committed legal errors by rejecting Plaintiff's testimony and the opinions of treating sources, namely Dr. Cunningham, and, as a result of these errors, this matter should be remanded for determination of benefits. Dkt. 14 at 2:8–11. Asserting the SSA's final decision is supported by substantial evidence and free of harmful legal error, the Commissioner asks the Court to affirm the decision of the ALJ. Dkt. 15 at 19:20–21.

**A. Consideration of Treating Physician Opinions**

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Generally, "more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). However, where an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle*, 533 F.3d at 1164 (quoting *Lester*, 81 F.3d at 830–31).

Plaintiff argues that the ALJ improperly ignored the opinions of Plaintiff's treating physician, Dr. Cunningham.[7] Plaintiff alleges that she has been treating with Dr. Cunningham since prior to the onset date, and that Dr. Cunningham's treatment notes

---

[7] Because the Court concludes that the ALJ did not err in discounting the opinion of Dr. Cunningham, it is not necessary to address whether Dr. Cunningham was in fact a treating physician. Based on the Court's review of the administrative record, prior to September 9, 2009, there is no evidence that Dr. Cunningham personally examined Plaintiff. The medical records from Pueblo Family Physicians were primarily signed by Ms. Sessler, who is a physician assistant, and not an acceptable medical source or a treating source. 20 C.F.R. §§ 404.1502, 404.1513(a).

- 14 -

1 consistently describe Plaintiff's lumbar spine problems.  Plaintiff contends that the ALJ
2 improperly gave greater weight to the non-examining physician, Dr. Desai.

3 Plaintiff argues that because Dr. Desai failed to examine Plaintiff, Dr. Cunningham's
4 opinion should be considered uncontroverted and can only be rejected based on clear and
5 convincing reasons. *See Carmickle*, 533 F.3d at 1164.  However, the opinion of a reviewing
6 physician is a contradicting opinion.  *Id.*    Therefore, Dr. Cunningham's opinion is
7 contradicted by Dr. Desai's opinion, and the ALJ may reject Dr. Cunningham's opinion for
8 specific and legitimate reasons supported by substantial evidence in the record.  The ALJ
9 does not carry the heavier burden of clear and convincing reasons.

10 Although a treating physician's opinion is generally afforded the greatest weight, it
11 is not binding on an ALJ with respect to the existence or severity of an impairment. *Batson*,
12 359 F.3d at 1194–95.  In this case, the ALJ determined that the treating physician's view
13 carried minimal evidentiary weight.  The ALJ discounted Dr. Cunningham's view, because
14 Dr. Cunningham appeared to rely uncritically on Plaintiff's subjective report of pain, did not
15 provide supportive objective evidence, was contradicted by other assessments of Plaintiff's
16 medical condition, and failed to account for the effectiveness of Plaintiff's medical treatment.
17 TR 19.

18 The Court notes that Dr. Cunningham's assessment is also in the form of checklist,
19 lacks substantive medical findings to support its conclusion, and relies upon the 2004 MRI.
20 TR 422–24.  Further, based on the Court's review of the administrative record, there is no
21 evidence that Dr. Cunningham conducted a clinical observation or examination of Plaintiff
22 prior to co-signing the assessment.

23 Dr. Desai reviewed Plaintiff's medical records and determined that Plaintiff suffered
24 from lower back pain and obesity, which is consistent with Dr. Cunningham's assessment;
25 however, Dr. Desai found that Plaintiff required fewer limitations and restrictions on
26 Plaintiff's ability to work than Dr. Cunningham. TR 397.  When presented with conflicting
27 medical opinions, the ALJ must determine credibility and resolve the conflict. *Matney*, 981
28 F.2d at 1019.  In the case of a conflict, "the ALJ must give specific, legitimate reasons for

1  disregarding the opinion of the treating physician." *Id.* This rule was honored in this case,
2  because the ALJ gave specific and legitimate reasons for discounting the opinion of Dr.
3  Cunningham as to the degree of Plaintiff's impairment.

4  Further, an ALJ may discredit a treating physician's opinion that is conclusory, brief,
5  and unsupported by the record as a whole, *id.*, or by objective medical findings, *Tonapetyan*
6  *v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ found this to be true for the
7  opinion of Dr. Cunningham. The Court finds that the ALJ did not err in giving minimal
8  evidentiary weight to the opinion of Plaintiff's treating physician, and provided specific and
9  legitimate reasons for doing so. *See Batson*, 359 F.3d at 1195; *Tonapetyan*, 242 F.3d at
10 1149.

**B.     Consideration of Plaintiff's Subjective Complaints**

12 With respect to Plaintiff's subjective complaints, the ALJ concluded "[t]he testimony
13 of [Plaintiff] is not fully credible concerning the severity and extent of her limitations." TR
14 19. Plaintiff argues that the ALJ failed to articulate an acceptable reason for discrediting her
15 testimony.

16 If a claimant produces objective medical evidence of an underlying impairment, as
17 Plaintiff did here, then the ALJ cannot reject the claimant's subjective complaints based
18 solely on a lack of objective medical support for the alleged severity of the pain. *Rollins v.*
19 *Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnelll v. Sullivan*, 947 F.2d 341,
20 345 (9th Cir. 1991)). When the ALJ finds the claimant's subjective pain testimony not
21 credible, the ALJ must make findings sufficiently specific to allow the reviewing court to
22 conclude that the ALJ rejected the testimony on permissible grounds and did not arbitrarily
23 discredit the claimant's testimony. *Id.* at 856–57. If no affirmative evidence of malingering
24 exists, then the ALJ must provide clear and convincing reasons for rejecting the claimant's
25 testimony about the severity of her symptoms. *Id.* at 857. "While subjective pain testimony
26 cannot be rejected on the sole ground that it is not fully corroborated by objective medical
27 evidence, the medical evidence is still a relevant factor in determining the severity of the
28 claimant's pain and its disabling effects." *Id.*

Here, the ALJ determined that the medical evidence supported a finding that Plaintiff suffered from medically determinable impairments that caused some of Plaintiff's alleged symptoms, but not to the extent that Plaintiff alleged. TR 19. The ALJ determined that Plaintiff's testimony concerning the intensity, persistence and limiting effects of her back pain was not credible to the extent that the testimony was inconsistent with the RFC determination. TR 19. As Plaintiff concedes in her brief, Plaintiff's medical treatment was "conservative," and, in fact, there is little objective medical evidence in the record, with respect to Plaintiff's treatment of her lower back pain that would support her testimony regarding the severity and debilitating nature of her pain. And, Plaintiff has not offered a good reason for not seeking more aggressive treatment. *See Carmickle*, 533 F.3d at 1162.

The ALJ found that the 2009 MRI revealed mild narrowing and mild facet arthropathy, with no direct compromise of neural elements. TR 19. As discussed above, the ALJ discounted Dr. Cunningham's assessment due to its subjective nature; therefore, this assessment does not adequately support subsequent subjective testimony by Plaintiff. TR 19. The ALJ cited the report from an SSA claims representative who noted that during a face-to-face interview on April 19, 2007, Plaintiff "did not show any difficulty in standing or walking." TR 20. The Court concludes that the ALJ provided clear and convincing reasons for not fully crediting Plaintiff's testimony.

Despite Plaintiff's testimony concerning the severity of her impairments, the ALJ's interpretation is reasonable and supported by substantial evidence. Contrary to Plaintiff's testimony regarding the debilitating nature of her pain, Plaintiff testified at the hearing that she sometimes takes "a couple of Tylenol" and her back is "okay." TR 457. The ALJ did not wholly reject Plaintiff's assertions of pain; indeed, the RFC assessment is largely consistent with Plaintiff's testimony. TR 19. However, the ALJ rejected Plaintiff's

1   allegations that she need to lie down for two hours in an eight-hour day, TR 455–56, because
2   this finding was not based on medical evidence in the record.[8]

3          The ALJ did not arbitrarily reject discredit the Plaintiff's testimony, and it is not the
4   Court's role to second guess the ALJ's fact findings. *See Rollings*, 261 F.3d at 857 ("[T]he
5   ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a
6   reasonable interpretation and is supported by substantial evidence."). Consequently, the
7   Court rejects Plaintiff's argument that the ALJ improperly discredited her subjective
8   complaints. The ALJ gave clear and convincing reasons for discounting Plaintiff's assertions
9   regarding the severity and effect of her impairments, and those reasons were supported by
10  substantial evidence.

11        **C.**    **Evidence of Uterine Cancer and Related Treatment**

12         Although not clearly articulated in Plaintiff's brief, Plaintiff cursorily argues that the
13  ALJ "disregarded the important medical evidence pertaining to [Plaintiff]'s uterine cancer
14  and internal bleeding. These conditions contributed to [Plaintiff]'s ability to continue to
15  work." Dkt. 14 at 6:19–20. However, the administrative record is void of medical evidence
16  regarding Plaintiff's uterine cancer and internal bleeding, and Plaintiff does not argue
17  otherwise in her reply brief Dkt. 16. Plaintiff and her counsel have offered no explanation
18  for the absence of the purported "important medical evidence" from the administrative
19  record. The ALJ cannot be faulted for disregarding evidence that was not submitted for
20  consideration. Therefore, the Court finds that the ALJ did not err by failing to consider
21  medical evidence that was not before the ALJ.

---

[8] The Court also notes that there were contradictions in the record that lessen Plaintiff's credibility. Specifically, there is a discrepancy between Plaintiff's testimony and her application for benefits (*e.g.*, the dates of her employment with the Honey Baked Ham Company). *Compare* TR 316 *with* TR 460. As well as discrepancies between Plaintiff's testimony and her medical records (*e.g.*, Plaintiff's weight gain and loss). *Compare* TR 384–85 *with* TR 446–47. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d 1162 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

## VII. CONCLUSION

In conclusion, the Court finds that the ALJ did not commit legal error by discrediting Dr. Cunningham's assessment and Plaintiff's subjective pain testimony, and by not considering medical evidence that was not submitted to the ALJ.

For the reasons stated above,

**IT IS ORDERED** that the decision of the ALJ is affirmed, and the Clerk of the Court shall enter judgment accordingly (said judgment shall serve as the mandate in this case).

DATED this 25th day of April, 2011.

James A. Teilborg
United States District Judge